Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
Mahru Madjidi, Esq., State Bar No. 297906
Mmadjidi@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CLARIECE GRANTHAM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

CLARIECE GRANTHAM,

     Plaintiff,

vs.

SECRETARY OF VETERANS
AFFAIRS DENIS MCDONOUGH.

     Defendant.

Case No.:

**PLAINTIFF CLARIECE GRANTHAM'S COMPLAINT FOR DAMAGES FOR:**

**(1) DISCRIMINATION IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973;**

**(2) HOSTILE WORK ENVIRONMENT HARASSMENT IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973;**

**(3) RETALIATION IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973;**

**(4) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973;**

**(5) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973;**

**(6) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT. OR**

**RETALIATION IN VIOLATION OF TITLE VII, THE ADA, & REHABILITATION ACT OF 1973.**

**DEMAND FOR JURY TRIAL**

PLAINTIFF'S COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

**Page**

SUMMARY ................................................................................................. 1

PARTIES ................................................................................................... 1

JURISDICTION & VENUE ......................................................................... 1

FACTS COMMON TO ALL CAUSES OF ACTION .................................... 2

FIRST CAUSE OF ACTION ....................................................................... 11

    Discrimination on the Bases of Gender/Sex, Disability (Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.) Against Defendant .......... 11

SECOND CAUSE OF ACTION ................................................................... 12

    Hostile Work Environment Harassment on the Bases of Gender/Sex & Disability .............................................................................................. 12

    (Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.) Against Defendant .......... 12

THIRD CAUSE OF ACTION ...................................................................... 13

    Retaliation for Engaging in Protected Activity  (Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.) Against Defendant .......... 13

FOURTH CAUSE OF ACTION ................................................................... 14

    Failure to Provide Reasonable Accommodation (Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.) Against Defendant .......... 14

FIFTH CAUSE OF ACTION ....................................................................... 15

    Failure to Engage in Interactive Process (Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973) Against Defendant .......... 15

SIXTH CAUSE OF ACTION ....................................................................... 16

    Failure to Prevent Discrimination, Harassment, and Retaliation Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973) Against Defendant .......... 16

PRAYER ................................................................................................... 17

Plaintiff, Clariece Grantham, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Clariece Grantham ("Plaintiff" or "Grantham"), whose employment with defendant Department of Veterans Affairs, including their head, Secretary of Veteran Affairs Denis McDonough (hereinafter referred to as the "Defendant") was wrongfully terminated.  Plaintiff brings this action against defendants for economic, non-economic, and compensatory damages, pre-judgment interest, and costs and reasonable attorneys' fees.

## PARTIES

1.   *Plaintiff:* Plaintiff Grantham is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2.   *Defendants:* Defendant Secretary of Veterans Affairs Denis McDonough, in his official capacity, at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles.

3.   Pursuant to 42 U.S.C. § 2000e-16(c) the Secretary of Veterans Affairs Denis McDonough is the proper defendant and serves as the head of the Department of Veterans Affairs.

## JURISDICTION & VENUE

4.   Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973.

5.   Under the special venue provision of Title VII, venue is proper in in any judicial district in the State in which the unlawful employment practice is alleged to have been

committed.  U.S.C. § 2000e-5(f)(3).  Here, the unlawful conduct occurred in the County of Los Angeles, which is the proper venue.

6.  Title VII vests federal district courts with exclusive jurisdiction over discrimination, harassment, and retaliation claims brought by federal employees.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976).

## FACTS COMMON TO ALL CAUSES OF ACTION

7.  *Plaintiff's hiring:* Clariece Grantham began working in the Department of Veterans Affairs on or around February 4, 2018 as a police officer.

8.  *Plaintiff's job performance:* At all times Grantham performed her job duties in an exemplary manner.

9.  *Plaintiff's protected status and activity:*

  a.  Plaintiff is female who suffers from disabilities, including but not limited to anxiety.

10.  *Defendants' adverse employment actions and behavior:*

  a.  Prior to beginning her employment, in or around the summer of 2017, while she was employed with the Department of Animal Control, she met an individual, (then) Lieutenant Ralph Garcia III ("Garcia"), who introduced himself as a police officer and throughout their discussions that day, attempted to recruit Grantham as a police officer for K9 division.  Grantham, who had always dreamed of and aspired to be a police officer, jumped at the opportunity and began communicating with Garcia about this prospect.

  b.  Over the course of the next approximately six months, Garcia and Grantham grew closer as Grantham was going through a divorce, was living with her extended family, and was going through a difficult time, leaving her vulnerable.  Garcia recognized these vulnerabilities and flirted to Grantham and served a source of company to her during this time, though the two were never in any formal relationship and the extent of their romantic flirting consisted of exchanging revealing photographs of one another. Garcia capitalized on Grantham's vulnerabilities and on one occasion even kissed her without her

permission, to which Grantham told Garcia that needs to never happen again. Grantham made certain to draw a line that she was not interested in any type of physical relationship of any kind with Garcia.

c.    On or around February 4, 2018, Grantham finally started her dream job as a policer officer working at the Department of Veterans Affairs ("VA"). Grantham started in the training division working under Captain Christian Perez ("Perez") and was assigned to the West Los Angeles location. Grantham lived in Lancaster and for the first month of her employment carpooled with Garcia as she could not afford the transportation to and from West Los Angeles from her home. By the time Grantham began her employment in February of 2018, Grantham once again made the lines between her and Garcia clear, Grantham was not interested in him romantically and the two were strictly co-workers. The two however still kept a very open dialogue and shared a lot with each other about their lives. But Garcia continued to attempt to push boundaries with Grantham.

d.    Throughout February of 2018 when Garcia and Grantham carpooled together, Garcia told Grantham that it was a good thing Grantham never had sex with him because she would not be able to handle him. Grantham, in an effort to end the conversation as she was feeling uncomfortable, stated that Garcia was correct, and they were never going to have sex. Garcia regularly continued to make comments like this to Grantham, who did her best to brush them off and ignore Garcia, despite how offensive and disturbing his comments were to her.

e.    Between February of 2018 to July of 2018 when Grantham was undergoing her training, Grantham endured severe and pervasive harassment at the hands of Garcia. Garcia made numerous comments including but not limited to: asking Grantham to get a hotel room with him, telling her she filled out her jeans nicely, making comments about her weight, that he knows of good hotel rooms as well as people whose houses he and Grantham can use to have sex that were private (so that his wife will not find out Garcia was cheating on her), asked Grantham to go to Las Vegas with him, and many other offensive comments.

PLAINTIFF'S COMPLAINT FOR DAMAGES

f.    Additionally, there two instances where Grantham was physically harassed by Garcia.  Under the guise of helping Grantham with Ground Defense Recovery (GDR) training, Garcia lured her into a private space in the training building to a specific room called the "mat room."  The first instance of the inappropriate and unwelcome touching was in February of 2018.  The two went to the mat room, and then towards the end of their one hour training, Garcia started rubbing Grantham's thighs and grazing his hands around her genital area while also stating that everyone had gone home for the day and nobody would find out if they did anything.  Grantham tried to laugh it off and suggest that he was being absolutely ridiculous.  When Garcia did not stop touching her, Grantham got up and went to put her shoes on and let Garcia know she needed to leave.

g.    In or around March of 2018, Garcia made arrangements to train Grantham in the mat room.  Grantham had reservations about this but was afraid of what Garcia would do if she declined and convinced herself to give Garcia the benefit of the doubt since she also needed assistance with GDR training, so she agreed.  The training was about an hour long and for most of the hour everything went well, and Grantham benefited from Garcia's assistance. However, towards the end of the hour, while the two were in a mounted position attempting to do the ground moves, Garcia started touching Grantham's thighs and then moved his hands to her genitals, this time touching her very aggressively and trying to get his hand under her clothing. Grantham kept moving his hands off of her, but Garcia continued to touch her again.  After this continued and Garcia would not stop, Grantham said, "It's time to go," and the two ended training and Grantham left.  To make matters worse, Grantham had to carpool with Garcia after this incident.  This was so traumatizing that Grantham borrowed money from her family so she would not need to carpool with Garcia anymore.

h.    In or around October of 2018, after returning from her training in the academy to the West Los Angeles VA location, she started to take steps to ensure she distanced herself from Garcia.

i.    In or around late December of 2019, the now "Captain" Garcia approached

Grantham and assisted her with getting a spot in his coveted SFST/ARIDE class, which Garcia taught. Grantham followed up with him after securing a position in the course to tell Garcia she had been approved. In response, Garcia told Grantham she looked unhappy. Garcia asked Grantham if her boyfriend was "putting out," suggesting that she was unhappy because she was not sexually satisfied with her boyfriend. Grantham felt trapped and disgusted but tried to laugh it off. Instead of taking the hint and stopping at that point, Garcia went on to tell Grantham that he could "take care" of Grantham if she wanted him to, and that he could "eat [Grantham] out until [she] cums," and that they did not even need to have "fuck". He then backtracked and said they "can" have sex, but that he can also give her oral sex to make her happy again and "put a smile" back on her face. At that point Grantham had enough, she awkwardly smiled, waiving Garcia off and walked to her patrol car, where she drove away as quickly as she could while trying to take in what just happened. Grantham was shaken and worried that because she was still on her probationary period, that if Garcia found out Grantham took issue with him in any way, Garcia was going to retaliate against her, say negative things about her performance to get her fired. Grantham was so afraid of Garcia that she cancelled the coveted training position she had acquired for Garcia's class that would have been beneficial to her job and career, just to avoid running into Garcia. This is one of many instances where Grantham had to forgo promotion opportunities and work opportunities because of Garcia.

j. In or around February of 2020, Grantham arrived to work to find Garcia on his phone. Garcia held his phone up to Grantham, showing her a picture of a naked woman, he had on his phone, and said "this is what I am fucking right now. Hot hu? She's a cop from another agency." Garcia then went on to share his sexual experiences with this woman. Grantham could not take it. She interrupted him and lied that Garcia was needed at the station.

k. In or around March of 2020, as things were growing worse with Garcia, Grantham complained to Sergeant Kevin Barandes ("Barandes") about Garcia's harassment and his offensive sexual comments. Barandes only told Grantham to "let it

go," and that was "who Garcia [was]." Grantham was beside herself about Barandes' reaction and disregard for the terrible things Garcia had said to Grantham.

l.    On or around April 28, 2020, while on patrol, Grantham responded to a call with Garcia and Barandes. After the call was completed, Garcia found Grantham alone on the scene while Barandes was gone, and confronted her, saying "So I hear you have been talking shit about me." Garcia then went on to reiterate that Grantham was not happy because of her alleged home life and that she needed to change things to be happy again at work again (implying that he could sexually please her and make her happy). After Garcia mentioned that "others" had "noticed" that she was unhappy, she felt violated, as it was apparent that Grantham and her personal life was a point of discussion among her male co-workers. On the brink of a panic attack, Grantham excused herself to "go do paperwork."

m.    On or around May 13, 2020, after witnessing a heated exchange between Perez and Garcia, Grantham stepped in to try to calm Perez down after Garcia had left. She confided in Perez that Garcia had sexually harassed her and repeated the comments Garcia had made to her in December of 2019. Perez responded that Garcia was showing Grantham's nude photos (which the two had exchanged prior to Grantham's employment with Defendant) to members of the department and the precinct, but that Perez refused to look at them. Grantham was mortified to find out about her nude pictures being shared with her co-workers.

n.    Grantham was called in to meet with Deputy Chief St. Croix ("Croix") on or around May 22, 2020. Croix informed Grantham that Perez had made a report about Grantham's complaint about Garcia to Perez. Croix neglected to read Grantham her Weingarten Rights or offer her union representation. Croix asked if he can record Grantham while she provided a statement against Garcia, because he was "bad at taking notes." Grantham refused and explained that Garcia regularly bragged about getting people fired, and she did not want to lose her job or have Garcia come after her if he finds out she had complained about him. Grantham confirmed Garcia had indeed done the

things she complained about to Perez, gave an example of how while Grantham was in the training division, Garcia had bragged about "nailing" and "fucking [Grantham] stupid." Grantham went on to share that Garcia had shared nude pictures of Grantham with other members of the department and throughout the precinct.  Croix said he did not know anything about that taking place and could not speak about it.

o.   In or around late May of 2020, Barandes informed Grantham that Croix wanted to speak with him, insinuating that this was Grantham's fault.  After Barandes' meeting with Croix on or around May 29, 2020, Barandes began to ignore Grantham and texted her the next day that he did not feel comfortable carpooling with her any longer.  At this point, Grantham felt so sick to her stomach and was so full of anxiety and panic that she called off work using CFRA/FMLA leave time.   When Grantham returned the following Monday on June 1, 2020 (she was required to go in because of the riots going on at the time), she was informed by Chief James Harden ("Harden") that a stay away order had been put in place for Garcia to stay away from Grantham pending an internal investigation on Perez's complaints about Garcia towards Grantham, and he was sorry for everything that was happening. Grantham requested that Harden do everything possible to make sure the stay away order is followed, otherwise it was going to cause Grantham severe anxiety and trigger a potential panic attack forcing her to take unwanted time off.

p.   In or around June of 2020, before making a motorist safety check, Grantham heard on her radio that Garcia was responding to a call in a nearby building.  Grantham radioed her supervisor Captain Carl Carson ("Carson") immediately, afraid that Garcia was not following the stay away order.  As Carson arrived, Grantham heard Garcia's voice on the phone with Carson, and learned that Garcia was asking about information on why Grantham made the motorist safety check.  Grantham, extremely frustrated, told Carson about her sexual harassment complaint against Garcia and the stay away order, which Carson stated he allegedly knew nothing about.  All of this was too much, and Grantham burst out crying.  She was filled with anxiety and could not work in her state.  Grantham told Carson she could not tolerate being at work and had to go home that day.  Grantham

PLAINTIFF'S COMPLAINT FOR DAMAGES

argued that the only reasons she was having a panic attack and anxiety was because the Department of Veterans Affairs was not following the stay away order which was also serving as an accommodation to Grantham, due to the fact that she suffered severe anxiety and debilitating panic attacks if she saw Garcia or knew he was coming to where she was.

q.  In or around June 24, 2020, as Grantham arrived on campus, she observed Garcia sitting at the precinct entrance.  Shocked to see him, Grantham turned away from her normal route and parking lot, just to drive away and avoid Garcia.  Just another example of how Garcia had instilled a reign of terror on Grantham and hindered her from being able to work regularly.

r.  In or around early July of 2020, Isaias Cornejo ("Cornejo") told Grantham that Garcia had confronted Cornejo and asked him why Cornejo had spent all shift talking to Grantham (the two had a shift together in the days prior).  Cornejo told Grantham that Garcia knew they had a shift together because he had watched them on camera, and he did not want to get involved in their lover's quarrel.   Grantham said there is no lovers quarrel and was offended by the comment.

s.  On or around July 22, 2020, after an arrest had been made by an officer, Garcia intervened and insisted on taking the suspect to jail, which he knew was going to result in him being in the vicinity that Grantham was working in at that moment, despite the fact that there was still a stay away order in place. Grantham found out from another officer that Garcia was right out front and suggested that Grantham go hide in her locker room, which she did.  Grantham waited in there for thirty minutes until she got a hold of someone and was informed that Garcia had left.  Despite all of this, Grantham wanted to work the rest of her shift and went to her patrol car. A Sergeant came to check on Grantham in her patrol car, where she was shaking and crying.  This Sergeant told Grantham that she should take the day off because she was not fit to continue her duties in the state she was in.  Ultimately, Grantham used her FMLA/CFRA leave to take the rest of the day off (without pay).

t.  On or around July 31, 2020, Grantham was getting ready to head out for the

day and Commander Roberto Lopez ("Lopez") called her into his office. He then asked her to wait until he could bring in a witness. Once a witness appeared, Lopez proceeded to tell her that "[members of department]" think she is going through a lot and that Grantham will benefit from using the employee assistance program ("EAP"). This is program that among other things, helps people with medical issues, including mental health issues. Grantham was extremely offended that her anxiety and panic condition led to them believing that she was generally mentally unfit to work, which was not the case.

u.  In or around August 12, 2020, Grantham was called in by Captain James Brinkman ("Brinkman") and formally informed that Cornejo had made a complaint against Grantham and that Cornejo had stated in his complaint that Grantham made him feel "uncomfortable." Grantham complained that this was retaliatory, and his "complaint" sounded a lot like her complaint against Garcia. Grantham said that Cornejo, who is making this complaint, is the same individual that not long ago, invited Grantham to his home to meet his wife and family. Grantham was furious about the false allegations. When Grantham was threatened with a potential change in her position to accommodate Cornejo's stay away order against Grantham, she was livid. Grantham said, "Is it because I am woman that this accusation is being taken more seriously than me accusing a man?" Grantham also complained that they were immediately addressing Cornejo's required stay away order from her, yet it took three months to move Garcia to the day shift and off of Grantham's shift, as an accommodation to her under the required stay away order that Garcia had to follow (but did not).

v.  On or about October 6, 2020 the findings of Cornejo's "complaint" were found to be unsubstantiated.

w.  In or around late September 18, 2020, Harden informed Grantham that Garcia was being allowed to return to work and on a shift that would overlap with Grantham. She was mortified to hear this and was in disbelief that Garcia was being allowed to return to his regular shift now that the department's internal investigation was over. Grantham complained to Harden that she was afraid and feared for her health and safety, yet Garcia

was still allowed to return, nevertheless.

11.  *Defendants' adverse employment actions:* As a result of the forgoing, Grantham has also been subjected to adverse employment actions including a decrease in pay and hours and opportunities for growth and promotions.  Starting in June of 2020, once Garcia had become well aware that Grantham was making repeated formal complaints against Garcia and that he was going to be under investigation, Grantham feared that Garcia was going to harm her or retaliate against her if he came across her or saw her.  At that point Grantham had to completely stop working overtime hours, because it requires her to work on a shift that would result in her coming into contact with Garcia, which put her health and safety at risk, and would trigger her disabling anxiety and panic condition.  To date, Grantham has been forced not to work any overtime hours.  Before June of 2020, Grantham worked anywhere from 8-24 hours of overtime every two weeks.

12.  *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

13.  *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

14.  *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

15.  *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted her administrative remedies by filing a timely formal Equal Employment Opportunity ("EEO") complaint with the Department of Veterans Affairs Office of Employment Discrimination pursuant to 42 U.S.C. § 2000e-16(c).  Plaintiff filed her complaint in accordance with 29 CFR §§ 1614.105 & 1614.106.  Pursuant to 29 CFR § 1614.407(a), Plaintiff files this lawsuit within 90 days of receiving a final agency decision.

# FIRST CAUSE OF ACTION

## Discrimination on the Bases of Gender/Sex, Disability

## (Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.)

## Against Defendant

16.    The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

1.    At all times herein mentioned, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 were in full force and effect and was binding on defendant. These laws requires defendant to refrain from discriminating against any employee because but not limited an employee's gender/sex, and/or disability (actual, perceived and/or history of).

2.    Plaintiff's gender/sex, and/or disability (actual, perceived and/or history of) and/or other characteristics protected by the aforementioned laws, were substantial motivating reasons for defendant's adverse employment actions against plaintiff.

3.    As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

4.    As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

5.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## SECOND CAUSE OF ACTION

### Hostile Work Environment Harassment on the Bases of Gender/Sex & Disability

**(Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.)**

**Against Defendant**

6.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

7.   At all times herein mentioned, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 was in full force and effect and was binding on defendant.  This statute requires defendant to refrain from harassing any employee because of an employee's gender/sex or disability (actual, perceived, history of).

8.   Plaintiff was subjected to harassing conduct through a hostile work environment, and quid pro quo sexual harassment,  in whole or in part on the bases of plaintiff's gender/sex and/or disability (actual, history of, perceived), and/or other protected characteristics, in violation of the aforementioned laws.

9.   As a proximate result of defendant's willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

10.   As a proximate result of defendant's willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

11.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## THIRD CAUSE OF ACTION

### Retaliation for Engaging in Protected Activity

**(Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.)**

**Against Defendant**

12.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

13.   At all times herein mentioned, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973 were in full force and effect and was binding on defendant. These statutes require defendant to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by these laws, including for seeking to exercise rights guaranteed under these laws, and/or assisting and/or participating in an investigation, opposing defendant's failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973.

14.   Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment, or retaliation, requesting accommodation or taking a medical leave, were substantial motivating reasons in defendant's adverse employment actions against plaintiff.

15.   As a proximate result of defendant's willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

16.   As a proximate result of defendant's willful, knowing, and intentional retaliation

against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

17.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION
### Failure to Provide Reasonable Accommodation
**(Violation of Title VII of the Civil rights Act of 1964; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973.)**
**Against Defendant**

18.    The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

19.    At all times herein mentioned, Title VII of the Civil rights Act of 1964, the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973, were in full force and effect and was binding on defendant.  These laws require defendant to provide reasonable accommodations to known disabled employees.

20.    Defendant wholly failed to attempt any reasonable accommodation of plaintiff's known disability. Defendants used plaintiff's disability and her need to take medical leave as an excuse for engaging in adverse employment actions against Plaintiff.

21.    Plaintiff believes and on that basis alleges that her disability and the need to accommodate her disability were substantial motivating factors in defendant's adverse employment actions against her.

22.    As a proximate result of defendant's willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

23.   As a proximate result of defendant's willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

24.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**<u>Failure to Engage in Interactive Process</u>**

**(Violation of Title VII of the Civil Rights Act of 1964, 42**

**U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act**

**of 1990 ("ADA"), and the Rehabilitation Act of 1973)**

**Against Defendant**

25.   The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

26.   At all times herein mentioned, Title VII of the Civil rights Act of 1964, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973, was in full force and effect and was binding on defendants. This statute requires defendants to engage in a timely, good faith interactive process to accommodate known disabled employees.

27.   Defendants wholly failed to engage in a timely, good-faith interactive process with plaintiff to accommodate her known disabilities. Instead, defendant engaged in adverse employment actions against Plaintiff.

28.   Plaintiff believes and on that basis alleges that her disability was a motivating factor in defendant's adverse employment actions against her.

29.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

30.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

31.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## SIXTH CAUSE OF ACTION

### Failure to Prevent Discrimination, Harassment, and Retaliation

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973)**

**Against Defendant**

32.   The allegations set forth in the preceding paragraphs are re-alleged and incorporated herein by reference.

33.   At all times herein mentioned, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq., the Americans with Disabilities Act of 1990 ("ADA"), and the Rehabilitation Act of 1973), were in full force and effect and was binding on defendants. These laws state that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

34.   During the course of plaintiff's employment, defendant failed to prevent its employees, including members of management, from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of her gender/sex & disability and/or other protected status and/or because plaintiff engaged in protected activity.  During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified and unlawful employment practices against employees in such

protected classes. During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of gender/sex & disability and/or other protected statuses and/or retaliation for plaintiff's protected activities.

35. Plaintiff believes, and on that basis alleges, that her sex, gender, disability, protected activity, and/or other protected status were substantial motivating factors in defendants' employees' discrimination against, harassment of, and retaliation against her.

36. Plaintiff believes, and on that basis alleges, that she was subjected to discrimination, harassment, and retaliation because of her sex, gender, disability, and/or other protected status and/or activity.

37. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

38. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

39. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## PRAYER

WHEREFORE, plaintiff, Clariece Grantham, prays for judgment against defendants as follows:

1. For general and special damages according to proof;

2. For exemplary damages, according to proof;

3. For pre-judgment and post-judgment interest on all damages awarded;

4. For reasonable attorneys' fees;

5. For costs of suit incurred;

PLAINTIFF'S COMPLAINT FOR DAMAGES

6.  For declaratory relief:

7.  For such other and further relief as the Court may deem just and proper;


ADDITIONALLY, plaintiff, Clariece Grantham, demands trial of this matter by jury. The amount demanded exceeds $25,000.00.


Dated: March 15, 2022                    SHEGERIAN & ASSOCIATES, INC.


By: _____
Mahru Madjidi, Esq.

Attorneys for Plaintiff,
CLARIECE GRANTHAM

PLAINTIFF'S COMPLAINT FOR DAMAGES